1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| QUINTON ARTHUR WOJCIECHOWSKI,<br><br>              Plaintiff,<br><br>      vs.<br><br>Carolyn W. Colvin,<br><br>Acting Commissioner of Social Security,<br>              Defendant. | No. 2:15-CV-00156-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 15, 16 |

11
12
13
14
15

       BEFORE THE COURT are the parties' cross-motions for summary judgment.

ECF Nos. 15, 16.  The parties consented to proceed before a magistrate judge.  ECF

No. 6.  The Court, having reviewed the administrative record and the parties'

briefing, is fully informed.  For the reasons discussed below, the Court denies

Plaintiff's motion (ECF No. 15) and grants Defendant's motion (ECF No. 16).

16

## JURISDICTION

17
18

       The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

19
20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

the ALJ's decision generally bears the burden of establishing that it was harmed.

*Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue,* 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for disability insurance benefits (DIB) and supplemental security income (SSI) benefits on February 6, 2012. In both applications, Plaintiff alleged a disability onset date of June 28, 2009. Tr. 268-74, 275-82. The applications were denied initially, Tr. 191-98, and on reconsideration, Tr. 199-210. Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on December 6, 2013. Tr. 46-98. On February 14, 2014, the ALJ denied Plaintiff's claim. Tr. 20-37.

At the outset, the ALJ found that Plaintiff met the insured status requirements of the Act with respect to his DIB claim through December 31, 2014. Tr. 22. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, June 28, 2009. Tr. 22. At step two, the ALJ found that Plaintiff has the following severe impairments: hernias; obesity; degenerative disc disease; migraine headaches; left Morton's neuroma; hypothyroidism; generalized anxiety disorder; pain disorder associated with both psychological factors and a

general medical condition; and alcohol and marijuana dependence.[1]  Tr. 22-23.  At

step three, the ALJ found that Plaintiff does not have an impairment or combination

of impairments that meets or medically equals a listed impairment.  Tr. 30.  The ALJ

then concluded that Plaintiff has the RFC to perform a range of light work, with

additional limitations.  Tr. 31.  At step four, the ALJ found that Plaintiff is unable to

perform his past relevant work.  Tr. 35.  At step five, the ALJ found that considering

Plaintiff's age, education, work experience, and RFC, there are jobs that exist in

significant numbers in the national economy that Plaintiff can perform, such as

parking lot attendant, pricer/marker, production assembler.  Tr. 35-36.  On that basis,

the ALJ concluded that Plaintiff was not disabled as defined in the Social Security

Act.  Tr. 37.

---

[1]The ALJ found that alcohol and marijuana dependence are severe impairments;

however, she noted in 2013 "[Plaintiff] denied that alcohol or drug use negatively

impacted his employment, except as a very young man and about 5-6 years ago

when he failed a drug test and completed a 90-day outpatient program for cannabis."

Tr. 28 (citing Tr. 696).  Dr. Arnold, the sole examining psychologist, did not

diagnose a substance abuse disorder.  Moreover, Plaintiff does not assign error in

this regard.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

On May 7, 2015, the Appeals Council denied review, making the Commissioner's decision final for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him DIB under Title II and SSI benefits under Title XVI of the Social Security Act. ECF Nos. 15, 17. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly discredited Plaintiff's symptom claims; and

2. Whether the ALJ properly weighed the medical opinion evidence.

## DISCUSSION

**A. Adverse Credibility Finding**

First, Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting his symptom claims. ECF No. 15 at 13-18.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably

have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

1    physicians or third parties concerning the nature, severity, and effect of the

2    claimant's condition. *Thomas*, 278 F.3d at 958-59.

3        This Court finds the ALJ provided several specific, clear, and convincing

4    reasons for finding that Plaintiff's statements concerning his alleged symptoms and

5    limitations are less than fully credible. Tr. 33.

6        *1.  Lack of Objective Medical Evidence*

7        First, the ALJ found that Plaintiff's alleged physical impairments and their

8    corresponding symptoms were not supported by the medical evidence. Tr. 33.

9    Subjective testimony cannot be rejected solely because it is not corroborated by

10   objective medical findings, but medical evidence is a relevant factor in determining

11   the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857

12   (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

13       The ALJ noted that most of the physical examinations showed essentially

14   normal findings. Tr. 33. For example, the independent medical examinations

15   (IMEs) on December 13, 2010 and May 13, 2011 showed only sprains and indicated

16   the claimant has remained stable. Tr. 33 (citing Tr. 460-61, 500-01). In 2010,

17   Plaintiff's diagnosis was cervicothoracic sprain, lumbar sprain, and mild

18   cervicothoracic and lumbar degenerative disc disease. Tr. 460. Dr. Goler noted

19   normal neurological examination, no significant radiographic findings, and only

20   mild pain behavior. Tr. 461. Dr. Goler noted that Plaintiff's physician found

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

1  significant atrophy in one of his legs, but this was not demonstrated on the current

2  examination.  Tr. 461.  Dr. Goler opined that the cervical MRI could be consistent

3  with multiple sclerosis (MS).  Tr. 23-24 (citing Tr. 453-62).[2]  This Court notes that

4  the physicians who gave opinions after Dr. Goler's and after further testing opined

5  that Plaintiff does not suffer from MS, yet Plaintiff continued to describe it as a

6  confirmed diagnosis on several occasions, another proper reason for the ALJ to find

7  Plaintiff less than credible.  Tr. 30 (citing Tr. 505-06 (treating neurologist Dr.

8  Pidgeon opined that MS is "highly unlikely")); *see also* Tr. 53-55 (opinion of

9  testifying expert, Irvin Belzer, M.D., that Plaintiff does not have MS); Tr. 558 (In

10 August 2011, examining doctor Jane Frances Akpamgbo, M.D., who also reviewed

11 Plaintiff's medical records, opined that Plaintiff does not have MS), Tr. 605

12 (examining doctor Peter Weir, M.D., noted that Dr. Pidgeon's neurology

13 consultation in July 12, 2011 indicated "that the claimant does not have evidence of

14 multiple sclerosis").

15

16

17 [2] The ALJ also relied on the 2010 opinion of treating doctor Paula Lantsberger,

18 M.D., who opined on November 17, 2010, that Plaintiff would be "capable of

19 working and has been working to this point."  Tr. 34 (citing Tr. 424).  Plaintiff

20 alleged onset beginning June 28, 2009.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

1    Moreover, at the second IME referenced by the ALJ, in May 2011, it is again

2   noted that "there is no evidence of any objective worsening of his conditions in the

3   neck, thoracic and low back since closure of [the L and I claim] August 5, 2009."

4   Tr. 25 (citing Tr. 500-01). Significantly, the ALJ noted Dr. Weir observed in May

5   2012 that Plaintiff was "muscular appearing," and the results of Plaintiff's physical

6   examination were "entirely unremarkable."[3]  Tr. 27 (citing Tr. 606, 608).

7    Because an ALJ may discount pain and symptom testimony based on lack of

8   medical evidence, as long as it is not the sole basis for discounting a claimant's

9   testimony, and here the ALJ relied on additional reasons, the ALJ did not err when

10  she found Plaintiff's complaints exceeded and were not supported by objective and

11  physical exam findings.

12

13

_____

14  [3] Social Security Administration reviewing physician, O.J. Ignacio, M.D., also relied

15  on Dr. Weir's examination findings, noting that Plaintiff was "muscular appearing

16  and did not appear to be in discomfort.  He had no loss of ROM [range of motion],

17  no muscle weakness, normal gait, no difficulty moving about."  Dr. Ignacio opined

18  that "this is inconsistent with claimant's report of very severe symptoms and

19  significant limitations."  Tr. 182.  The ALJ credited Dr. Ignacio's RFC for a range of

20  light work.  Tr. 34.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 12

*2.  Daily Activities*

The ALJ found that the level of physical impairment Plaintiff alleged was inconsistent with multiple reports of his daily activities.  Tr. 33.  A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.").  Here, the ALJ found, for example, that Plaintiff was able to go fishing with his children, go hunting with friends two to three times a year, and likes "off-road driving."  Tr. 33 (citing Tr. 606, 696, 698).  The records shows that Plaintiff shopped for groceries, cooked, did laundry and household chores, drove, and reported no problems with personal care.  Tr. 32-33 (citing Tr. 559, 606, 698).  Plaintiff's children, ages 11 and 13, visited him every other week.  Tr. 32 (citing Tr. 74-75).  Plaintiff's March 2011 report, stating he was "*almost* unable to do automotive repair due to pain," and a couple of times a week he went out to a friend's house or to his children's school functions, further supported the ALJ's finding.  Tr. 301 (emphasis added).

1    "While a claimant need not vegetate in a dark room in order to be eligible for

2    benefits, the ALJ may discredit a claimant's testimony when the claimant reports

3    participation in everyday activities indicating capacities that are transferable to a

4    work setting" or when activities "contradict claims of a totally debilitating

5    impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations

6    omitted). The ALJ found that Plaintiff's activities do not "provide support for a

7    conclusion of disability," in other words, Plaintiff's activities demonstrate that he is

8    not precluded entirely from performing basic work-related activity and his daily

9    activities are inconsistent with his allegation of completely debilitating pain. Tr. 33.

10    The wide range of physical activities that Plaintiff reported is inconsistent

11    with allegedly disabling limitations and demonstrates an ability to perform work-like

12    activities. Plaintiff contends that the ALJ erred when relying on his reportedly

13    fishing with his children because the record does not indicate how this activity was

14    performed and whether, for example, Plaintiff simply went along while his children

15    fished. Moreover, Plaintiff alleges, the ALJ should have given him a chance to

16    explain this activity. ECF No. 15 at 14-15. Plaintiff cites no authority for the

17    position that an ALJ has to inquire further of a Plaintiff prior to relying on an

18    inconsistency in the record. Any alleged error is harmless, however, because the

19    ALJ also relied on Plaintiff's unchallenged statement that he is able to hunt two to

20    three times a year with friends – an activity that is inconsistent with Plaintiff's

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

allegedly disabling symptoms.  Tr. 33 (citing Tr. 83).  The ALJ properly relied on Plaintiff's daily activities that exceeded alleged limitations when she assessed Plaintiff's credibility.

### 3. Reason Employment Ended

Third, the ALJ relied on the fact that Plaintiff stopped working for reasons unrelated to his allegedly disabling impairment.  Tr. 33.  The ALJ noted that Plaintiff's last employment ended due to Plaintiff "quitting after an argument with his boss."  Tr. 33 (citing Tr. 454 ("The claimant has not worked since the end of June of 2009.  He states that after his injury he was off work for approximately a week.  He then went back to work, got into an argument with his boss and quit and has not returned to work since then"); Tr. 605 (Plaintiff stopped work three years ago after being involved in a dispute with his employer)).

An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in making a credibility determination.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (the ALJ properly discounted Plaintiff's credibility based, in part, on the fact that the claimant's reason for stopping work was not his disability); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (the fact that the claimant left his job because he was laid off, rather than because he was injured, was a clear and convincing reason to find him not credible).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

1    Plaintiff now contends that the reason he lost his job was that he raised safety

2    concerns following his back injury.  ECF No. 15 at 16 (citing Tr. 454).  Specifically,

3    he states "[t]his clearly shows that after [Plaintiff] was injured, he sought safety

4    measures for protection and to avoid further injury."  ECF No. 15 at 16.  Thus, he

5    alleges, his reason for leaving was injury-related.  However, even his statement

6    makes clear that Plaintiff left his job because of a disagreement about procedures,

7    not a physical inability to perform the job due to his injury or allegedly disabling

8    condition.  The ALJ properly considered and reasonably concluded that Plaintiff's

9    injury or condition was not the reason that he stopped working when assessing his

10    credibility.

11    *4. Inconsistencies in Plaintiff's Statements*

12    In discrediting Plaintiff's symptom claims, the ALJ also cited several

13    inconsistencies in Plaintiff statements.  Tr. 33.  In making a credibility evaluation,

14    the ALJ may rely on ordinary techniques of credibility evaluation.  *Smolen v.*

15    *Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Contradiction with the medical record

16    is a sufficient basis for rejecting the claimant's subjective testimony.  *Carmickle* v.

17    *Comm'r of Social Security*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Johnson v. Shalala*,

18    60 F.3d 1428, 1434 (9th Cir. 1995).  Moreover, a strong indicator of credibility is the

19    consistency of the individual's own statements made in connection with the claim

20    for disability benefits and statements made to medical professionals.  S.S.R. 96-7p.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 16

1    For example, in August 2011 Plaintiff reported a "significant episode of

2    dizziness while in [neurologist] Dr. Pidgeon's office a month earlier."  Tr. 33.

3    Plaintiff said that while sitting in the waiting room at the neurologist's office [on

4    May 31, 2011], he had an episode of dizziness that lasted 15 or 20 minutes.  Tr. 33

5    (citing Tr. 581).  However, the ALJ found that Dr. Pidgeon's records fail to support

6    this allegation.  Tr. 33 (citing Tr. 505) (Dr. Pidgeon notes no new complaints at this

7    time).  Plaintiff contends that symptoms noted by Dr. Pidgeon on May 31, 2011

8    include blurred vision, tripping, numbness and tingling in the feet.  ECF No. 17 at 4

9    (citing Tr. 510-11).  Plaintiff's contention fails because these are not newly reported

10   symptoms and, more importantly, the notation does not substantiate Plaintiff's report

11   that he had experienced an extreme episode at Dr. Pidgeon's office.  *See* Tr. 512 (at

12   the same May 31 appointment, Dr. Pidgeon opines that tingling in feet may be

13   related to elevated TSH levels); Tr. 510 (Dr. Pidgeon notes that at the prior

14   appointment, Plaintiff complained of tripping and blurred vision); Tr. 511 (Plaintiff

15   also reported "smoking marijuana daily for the last few months").

16       Next, the ALJ found that Plaintiff had inconsistently reported his smoking

17   habits and substance use.  For example, the ALJ noted Plaintiff stated in August

18   2011 that he quit smoking in January 2011 (Tr. 559), but in April 2011, Plaintiff

19   inconsistently reported he quit smoking five years ago.  Tr. 33 (citing Tr. 548).  With

20   respect to substance abuse, the ALJ noted that Plaintiff had reported significant daily

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 17

use of marijuana, but had inconsistently reported that he uses it for nausea.  Tr. 33

(citing Tr. 559 (On August 17, 2011, Plaintiff told examiner Dr. Akpamgbo that he

uses marijuana daily, and had last used the day before the evaluation); Tr. 605 (Dr.

Weir notes in 2012 that Plaintiff "admits to frequent use of marijuana")).  The ALJ

pointed out, however, that Plaintiff's statement in 2013 that he uses marijuana for

purported nausea was not consistently supported by reports of nausea to treating or

examining sources until 2013, thereby diminishing Plaintiff's credibility.  Tr. 33

(citing Tr. 736 (treating Dr. St. Clair notes "uses marijuana, helps with nausea,

patient states")).  The ALJ reasonably determined that Plaintiff made inconsistent

statements that undermined his veracity as a witness.

In sum, despite Plaintiff's arguments to the contrary, the ALJ provided several

specific, clear, and convincing reasons, supported by the record, for rejecting

Plaintiff's testimony.  *See Ghanim*, 763 F.3d at 1163.

**B.  Medical Opinion Evidence**

Next, Plaintiff faults the ALJ for failing to identify the weight given to the

April 2013 opinion of examining psychologist, John Arnold, Ph.D., and for

discrediting Dr. Arnold's medical opinions regarding Plaintiff's limitations.  ECF

No. 15 at 19-21.

There are three types of physicians: "(1) those who treat the claimant (treating

physicians); (2) those who examine but do not treat the claimant (examining

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 18

1  physicians); and (3) those who neither examine nor treat the claimant but who

2  review the claimant's file (nonexamining or reviewing physicians)." *Holohan v.*

3  *Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally,

4  a treating physician's opinion carries more weight than an examining physician's,

5  and an examining physician's opinion carries more weight than a reviewing

6  physician's." *Id*. "In addition, the regulations give more weight to opinions that are

7  explained than to those that are not, and to the opinions of specialists concerning

8  matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

9      If a treating or examining physician's opinion is uncontradicted, an ALJ may

10  reject it only by offering "clear and convincing reasons that are supported by

11  substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

12  "However, the ALJ need not accept the opinion of any physician, including a

13  treating physician, if that opinion is brief, conclusory and inadequately supported by

14  clinical findings." *Bray v. Comm'r of Soc. Sec. Admin,* 554 F.3d 1219, 1228 (9th

15  Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

16  examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may

17  only reject it by providing specific and legitimate reasons that are supported by

18  substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

19      Here, Dr. Arnold opined that Plaintiff was markedly limited in the ability to

20  (1) perform activities within a schedule, maintain regular attendance, and be

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 19

1   punctual within customary tolerances; and (2) complete a normal workday and

2   workweek without interruption from psychologically based symptoms and to

3   perform at a consistent pace without an unreasonable number and length of rest

4   periods.  The form defines "marked limitation" as "[f]requent interference on the

5   ability to function in a work setting."  Tr. 700.

6        As an initial matter, Plaintiff's contention that the ALJ failed to identify the

7   weight given to Dr. Arnold's opinion is without merit.  At the hearing, Plaintiff's

8   counsel propounded a hypothetical based on Dr. Arnold's assessed limitations.  Tr.

9   95-96, 701.  In her decision the ALJ stated:

10       The testimony of the vocational expert in this regard is *not found to be entitled*
         *to significant weight* herein in view of the extent to which the limitations

11       proposed by counsel exceed the degree of restriction that is supported by the
         evidence of record for reasons that have been identified in detail in this

12       decision.

13  Tr. 36 (citing Tr. 95-96) (emphasis added).

14       As noted in her decision, the ALJ gave little weight to Dr. Arnold's opinion

15  that Plaintiff suffered from marked psychological limitations.  Tr. 34 (citing Tr.

16  701).  Because Dr. Arnold's opinion is contradicted, in part by a treating doctor's

17  records, the ALJ was required to provide specific, legitimate reasons supported by

18  substantial evidence to reject the challenged opinion.  *Bayliss,* 427 F.3d at 1216.

19       The Court finds the ALJ's offered specific, legitimate reasons for discounting

20  Dr. Arnold's medical opinions.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 20

*1. Lack of treatment*

First, the ALJ discounted Dr. Arnold's assessed marked limitations in work-related functioning because Plaintiff did not "base any of his allegations of disability on mental health concerns and there is no record of any mental health treatment whatsoever." Tr. 34.  Failing to seek treatment for a mental disorder "until late in the day" may not be a substantial basis on which to conclude that an assessment of a claimant's functioning is inadequate, since "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir. 1996) (citation and quotation omitted).  However, the ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination.  *Burch*, 400 F.3d at 681; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (The amount and type of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms").  Although Dr. Arnold evaluated Plaintiff in April 2013, by the time of the hearing eight months later, Plaintiff still had not sought any mental health treatment.  This lends support to the ALJ's conclusion that Plaintiff's mental health impairments are not so severe as to preclude work, since one would presumably seek treatment for a disabling condition, at least after an evaluation.  There is no indication on this record that Plaintiff's failure to seek mental health treatment was the result of a mental disorder.  The ALJ was also correct that Plaintiff did not allege

disability related to mental impairments when he applied for benefits.  Tr. 34; *see, e.g.* Tr. 308 (Plaintiff indicates that he is unable to work due to MS, back and shoulder injuries, diabetes and hernia).  The ALJ properly considered both of these factors.

### 2. *Internal inconsistencies*

Next, the ALJ discounted Dr. Arnold's opinion because it was internally inconsistent.  The ALJ found that the assessed marked limitations were inconsistent with Dr. Arnold's GAF, which indicated no more than moderate symptoms or limitations.  Here, Dr. Arnold assessed two marked and two moderate limitations in work-related functioning. Tr. 34 (citing Tr. 701).  He further opined, however, that Plaintiff's current (and past year's) GAF[4] was 55, indicative of only moderate symptoms.  Tr. 34 (citing Tr. 698).  An ALJ may reject opinions that are internally

---

[4] A Global Assessment of Functioning (GAF) of 55 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. text rev. 2000) (DSM-IV-TR, p. 34).  Although the GAF is no longer used, the ALJ was entitled to consider its inconsistency with Dr. Arnold's assessed marked limitations.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 22

inconsistent.  *Nguyen*, 100 F.3d at 1464.  An ALJ is not obliged to credit medical

opinions that are unsupported by the medical source's own data and/or contradicted

by the opinions of other examining medical sources.  *Tommasetti*, 533 F.3d at 1041.

   *3. Inconsistency with Medical Record as a Whole*

   Third, the ALJ observed that Dr. Arnold's opinion was inconsistent with

treatment notes by Alan Purdy, M.D., and with Plaintiff's general lack of complaints

of mental health symptoms or limitations.  Tr. 34[5] (citing Tr. 621 (Dr. Purdy notes

Plaintiff denied complaints of psychological symptoms); Tr. 623 (Dr. Purdy

describes Plaintiff as "alert and cooperative; normal mood and affect; normal

attention span and orientation; memory intact"); Tr. 665 (Plaintiff again denied any

psychological symptoms); Tr. 666 (Dr. Purdy again describes Plaintiff as appearing

alert, cooperative, with normal mood, affect, attention, and orientation; memory

intact)).

   The ALJ notes that Plaintiff's only description of mental health symptoms

was his statement to Dr. Arnold that he had been on somewhat of an "emotional

roller coaster" until his medications reached a therapeutic level, with *no mention of*

*any current emotional problems.*  Tr. 28, 34 (citing Tr. 695) (emphasis added).

---

[5] The ALJ cites generally to Exhibits 17F and Exhibit 20F of Dr. Purdy's records.

Tr. 34.  The Court has referenced specific pages within the exhibits.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 23

Significantly, Plaintiff told treating physician Dr. Lantsberger in October 2010 that his wife had filed for divorce recently "and this was very stressful, but he denied depression or anxiety," and neither was observed.  Tr. 23 (citing Tr. 423).

The ALJ properly relied on the inconsistency of Dr. Arnold's assessment with the record as a whole when she gave it little weight.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discredit physicians' opinions that are unsupported by the record as a whole) (citation omitted). Similarly, the ALJ noted that Dr. Arnold did not have the entire record to review when he performed his evaluation.  Tr. 34.  It appears that Dr. Arnold had only Dr. Weir's physical examination report, Tr. 697-98, and the May 2011 IME, but no treating doctor's records.  Tr. 698 (citing Tr. 495-501).  The ALJ properly also relied on this factor when weighing Dr. Arnold's opinion.  *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings") (citation and quotation omitted).

The record shows Plaintiff's reported functioning was also inconsistent with Dr. Arnold's opinion.  Plaintiff reported that he lived alone, shopped twice a month, cooked, did laundry, cleaned, drove and was able to go out alone.  Plaintiff's children stayed with him every other weekend; he went fishing with them and attended school functions.  In addition, Plaintiff visited friends, went hunting with

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 24

friends two to three times a year, and enjoyed "off-road" driving. Tr. 27-28, 33

(citing Tr. 559, 606, 696, 698).  Because the Commissioner is not required to credit

medical opinions that are unsupported by the record as a whole, *Batson*, 359 F.3d at

1195, including a claimant's demonstrated functioning, the ALJ gave specific,

legitimate reasons supported by substantial evidence for discrediting Dr. Arnold's

extreme opinion.

### 4. Reliance on Plaintiff's Self Reports

Next, the ALJ rejected Dr. Arnold's opinion because it appeared to be based

upon the claimant's self-reports.  A physician's opinion may be rejected if it is based

on a claimant's subjective complaints, which were properly discounted.

*Tommasetti,* 533 F.3d at 1041(An ALJ may reject an opinion that is "largely based"

on a claimant's non-credible self-reports); *Tonapetyan v. Halter*, 242 F.3d 1144,

1149 (9th Cir. 2001); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair,*

885 F.2d at 604.

Plaintiff contends that because Dr. Arnold administered a battery of objective

tests, the ALJ incorrectly concluded that the examiner relied on Plaintiff's subjective

reporting.  ECF No. 15 at 19-20.  Here, a review of Dr. Arnold's opinion supports

the ALJ's conclusion that it was based primarily on Plaintiff's self-reports and self-

descriptions.  *See* Tr. 695-98.  This Court notes that Dr. Arnold subjected Plaintiff to

objective tests, however, he failed to discuss how the test results caused any

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 25

functional limitations or indicated that Plaintiff was unable to work.  Tr. 697-98.

Instead, Dr. Arnold diagnosed *mild* generalized anxiety disorder, pain disorder with

psychological factors and a general medical condition, and antisocial personality

features.  Tr. 698.  However, the MSE results were mild or within normal limits.  Tr.

697.  In sum, test results do not support Dr. Arnold's assessed marked limitations,

indicating Dr. Arnold must have relied, at least in part, on Plaintiff's unreliable self-

report when he assessed marked limitations in work-related functioning.  As

discussed above, the ALJ properly discredited Plaintiff's testimony.

*5. Dr. Arnold's Prior Assessments*

Last, Plaintiff contends, and Defendant concedes, that the ALJ erred by

relying on Dr. Arnold "regularly" assigning marked limitations to claimants, and on

the purpose of the evaluation (to determine if Plaintiff should be found eligible for

Social Security benefits) when she rejected Dr. Arnold's opinion.

Any error is harmless because the ALJ gave additional specific and legitimate

reasons, supported by substantial evidence, for rejecting Dr. Arnold's opinion.  *See*

*Carmickle*, 533 F.3d at 1162-63.

Here, Plaintiff alleges that the ALJ should have weighed the evidence

differently, but the ALJ is responsible for reviewing the evidence and resolving

conflicts or ambiguities in testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th

Cir. 1989).  If there is substantial evidence to support the administrative findings, or

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 26

if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

### CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1.  Plaintiff's motion for summary judgment (ECF No. 15) is **DENIED**.

2.  Defendant's motion for summary judgment (ECF No. 16) is **GRANTED.**

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE** the file.

DATED this 24th day of June, 2016.

_S/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 27